## Mutual Protective League v. Anton Langsdorf.

1. FRATERNAL BENEFIT SOCIETY—*when engagement in prohibited occupation will defeat recovery under benefit certificate.* The engagement by a member in an occupation prohibited by his contract of insurance will defeat a recovery by his beneficiaries under the certificate issued upon his life.

Action of assumpsit. Appeal from the Circuit Court of Monroe County; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1905. Reversed with finding of facts. Opinion filed March 22, 1906.

D. R. KINDER, for appellant; WILSON & ERD, of counsel.

BOLLINGER, GAUEN & WINKELMANN, for appellee.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

Appellant is a fraternal beneficiary society. In 1899 it issued to Louis W. Langsdorf, member of the society, a certificate of insurance, naming appellee as beneficiary therein. The member died on August 1, 1904. Appellant refused to pay the sum required by the certificate, and this suit was brought. In the written application for membership, deceased warranted the truth of the statements contained therein, and agreed to conform to all laws, rules and regulations then in force or thereafter adopted. He represented his occupation as that of a merchant, and agreed that if his health became impaired as the result of the use of intoxicating liquors, the certificate should become null and void. The laws of appellant provided that appellant would not accept as a member any person engaged in "brewing, distilling, saloonkeeping and bartend-

ing;" they further provided, that if a member engaged in the occupation of "saloonkeeping, bartending, brewing or distilling," he should surrender his certificate. It is contended by appellant that deceased was a merchant when admitted to membership, but thereafter frequently tended bar in his brother's saloon until the death of the latter in 1903, after which he became a regular bartender therein until shortly before his death, when compelled to quit work by his last illness; also that his health became impaired by the excessive use of intoxicating liquors. The defenses, based upon the provisions of the certificate, application, constitution and laws, are set up in various pleas, to which replications were filed, some of which traverse the allegations of the pleas and others admit that deceased did tend bar, but set out that such was casually done to assist the proprietor, without fee or reward, and that defendant accepted assessments and dues from him, with full knowledge of his acts and occupation, and therefore is estopped from claiming a forfeiture. So far as his engaging in a prohibited occupation is concerned, the case turns upon the replications in estoppel. So far as his health being impaired by the use of intoxicating liquors, the issue is made by traverse of the plea setting up the cause of death.

The case was tried by jury resulting in a verdict for the plaintiff for $1,000, the face of the certificate. A motion for a new trial was overruled, and from the judgment rendered this appeal is prosecuted. On errors duly assigned the contention is made by appellant, that the trial court erred in the admission of evidence; in giving instructions to the jury; in overruling the motion for a new trial; and that the verdict and judgment are contrary to the evidence. From a careful examination of the record, we are of opinion that the last contention must prevail. It clearly appears from the evidence, in which there is no dispute, that Louis F. Langsdorf, the insured, was engaged as a saloon-keeper or bartender prior to and at the time of his death. This was an occupation prohibited by the laws of appellant society to which the deceased subscribed, and for the viola-

tion of which his contract for insurance was forfeited. The condition that deceased should not engage in the prohibited occupation, and in case he did that the certificate should become void, entered into and became an essential part of the contract between appellant and the assured member. In support of this plea, which is a complete bar to the action, the testimony of all the witnesses, as well those for the plaintiff as for the defendant, is in substantial accord. In his petition for membership deceased gave his occupation as that of a merchant, and that he was so engaged when admitted, December 1899, is not in dispute. It appears that a brother engaged in the saloon business died in April 1903, and after that until his death the deceased tended the bar and conducted the business left by his brother. Such is the evidence. We quote from all the witnesses who testified upon that subject. Louis Schilling: "I knew Louis Langsdorf. When he became a member of the council he was a merchant. After his brother's death (April 18, 1903,) he was in the store sometimes, but most of the time he run the saloon until shortly before he died; he quit running the saloon because of his health. I was well acquainted with him, knew his habits and saw him nearly every day. He was usually tending bar after the death of Anton (his brother)." James Cleary: "I have seen him tend bar; by tending bar I mean that he was doing same in a saloon; most any time when I called there he was tending bar; he devoted most of his time to tending bar in his father's saloon." Otto Kucher: "I am a practicing physician. Sometimes I saw Louis in the bar room and other times working in the harvest field, and in the winter time he helped butcher. When I happened to come to the saloon it was generally Louis that shoved out the beer." J. Herman Jaenke: "I am postmaster, justice, saddler and telephone operator. I saw Louis work in the saloon and tend bar therein for two years. He usually got the mail and would come to telephone about the beer business, when I was called upon by the brewer to find out what the saloon wanted; sometimes when Louis was not

there I would ask the old man what they wanted, and he would tell me to wait for Louis—now and then he would state that Louis would come down and let me know, and Louis did so, and said sometimes, 'I want three kegs of beer and one box of bottle beer, and so much ice, I want so much of this and that;' that is usually what he said when he came down to give me the order; this happened pretty often. I saw him in the saloon tending bar." William Bushman: "I knew deceased. His general occupation for a half year before his death was that of tending bar in a saloon." Anton Langsdorf, appellee and father of deceased, called in rebuttal: "When Mr. Jaenke asked about beer I told him I would go over and see, and I looked in the cellar and came back and told him. Sometimes I sent Louis down so he could order the beer. Louis tended bar when nobody else was inside, because Mrs. Langsdorf was a poor woman and she wanted to make some money; he was not there all the time in one day, but may have been a whole day at a time."

The replication, in answer to this plea, that defendant had full knowledge of the deceased's occupation and with such knowledge accepted payment of assessments to the time of his death, is without any competent evidence found in the record to support it. The only evidence offered in proof of this replication was the testimony of the witness Henry Schneider, who was secretary of the local council from September 1899 to January 1, 1904. Over the objections of appellant the witness was permitted to testify to the contents of a letter received from the supreme lodge sometime in 1903. The witness stated that he had destroyed the letter before this controversy arose and could not therefore produce it. This testimony as to contents of the letter was objected to, for the reason that notice was not served on defendant to produce a copy. Under the rule which obtains in this State, there are degrees in secondary evidence, and before parol evidence of the contents of a letter may be heard it should appear that neither the letter nor a copy is available for use as evidence. Next to

the letter itself, a copy is the best evidence, and in this case notice to produce a copy should have been required before testimony of the contents was permitted. The superior degrees of secondary evidence take precedence in order of admissibility. Mariner v. Saunders, 5 Gilman, 113; Illinois Land & Loan Company v. Bonner, 75 Ill. 315; C., C., C. & St. Louis Railway Company v. Newlin, 74 App. 638.

As to the contents of the lost letter, Schneider testified, in substance, that the head office had information that deceased was a saloonkeeper and directed him as secretary of the local council to investigate and make report. He further testified, that in this same letter the head office stated, that they had learned the deceased was using intoxicating liquors to excess, and that matter he was likewise directed to investigate. Whether this evidence was properly admitted or not, would not avail the appellee, as a letter-press copy of the letter in question was produced by appellant and admitted in evidence. By the copy it is conclusively shown that no reference was made to the deceased's occupation, but the statement and inquiry contained in the letter related solely to his excessive use of intoxicating liquors. With this condition of the record it may fairly be said that there is no evidence tending to prove the replication and that the evidence in support of the plea is ample, sufficient and uncontradicted. It being thus established by the undisputed evidence, that deceased engaged in the prohibited occupation of conducting a saloon and tending bar in the sale of intoxicating liquors, his beneficiary, the appellee, is barred of all right and claim under the certificate and is without legal cause of action against appellant. The judgment of the Circuit Court will therefore be reversed without remanding.

*Reversed, with finding of fact.*

We find as a fact, to be incorporated with the judgment herein, that Louis W. Langsdorf, the insured named in the certificate under which this suit was brought, was, prior to and at the time of his decease, engaged as a saloonkeeper

and bartender in the sale of intoxicating liquors and that appellant had no knowledge prior to his death that he was so engaged, and that the said certificate was null and void and of no legal effect at the time this action was brought.